ASCHER *v.* OLD COLONY INSURANCE COMPANY

No. 41659          January 23, 1961          126 So. 2d 255

*Cox & Dunn,* Jackson, for appellant.

*Watkins & Eager,* Jackson, for appellee.

McGehee, C. J.

This suit is on a fire insurance policy issued by the Old Colony Insurance Company in favor of John Hart

Asher in the sum of $2,500 on a certain dwelling house located about four miles east of Russum, Mississippi, in Jefferson County. The house was also insured by the Birmingham Fire Insurance Company in the same amount on the same day, February 16, 1958. The house was destroyed by fire from some unknown cause on June 6, 1958.

The policy provided for nonliability of the insurer "while the described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days". The house had been vacant or unoccupied for more than sixty days at the time of the fire, according to the effect of the decision of the chancellor. The suit of the appellant against Birmingham Fire Insurance Company was filed in the circuit court and tried there subsequent to the trial of the instant case in the chancery court. Both cases were decided in favor of the respective insurance companies, and the judgment appealed from in the case of John Hart Asher v. Birmingham Fire Insurance Company, Cause No. 41,627, was affirmed by this Court on Monday, January 16, 1961. The decision in that case is controlling here in all essential particulars, except that in the instant case on October 16, 1959, the chancery court was requested to reopen the case and permit one witness Johnny Combs to testify as to certain personal property that he had kept stored in the house and that he and his wife had spent at least two nights there during the sixty day period immediately prior to the fire; that he was looking after the property as a caretaker during the sixty day period; and that he was entitled to introduce certain documents which permitted the use and care of the property by a caretaker.

██ ██ Upon the making of the motion by the appellant to be allowed to reopen the case for the purposes aforesaid, the chancellor overruled the motion, and thereafter, for the first time, on November 5, 1959, the appel-

lant filed a motion in which there was set forth what he proposed to prove by the said witness Johnny Combs. But at the time the motion to reopen the case was overruled, the appellant did not dictate into the record or otherwise disclose just what he proposed to prove by this witness. Except for this fact, the chancellor would have been justified in allowing the case to be reopened for the purposes aforesaid. But we are of the opinion that since the term of the chancellor was to expire on December 31, 1959, he did not abuse his discretion in declining to reopen the case for further proof on October 16, 1959. And especially in view of the fact that it appears from the record that the testimony of this witness would have been cumulative to that which the chancellor had already heard from the wife of the witness, who would naturally have known the same facts in regard to their alleged occupancy of the house within the 60 day period involved. Her testimony was undisputed and therefore did not need to be supplemented. We do not think that her testimony or the testimony later set forth in the motion filed on November 5, 1959, proposed to be made by her husband would have sustained the right of the appellant to a recovery in this case under all the facts and circumstances.

It is stated in the brief of the appellee, and the statement is unchallenged, that the case in the circuit court against the Birmingham Fire Insurance Company was tried subsequently to the case at bar in the chancery court, and it does not appear that this witness was used by the appellant on the trial in the circuit court.

Sometime after the house was destroyed by fire, an application for a vacancy permit was prepared and was backdated to a date prior to the fire, but the said application was not signed by the appellant and was never delivered to the appellee. When this backdated application and permit was submitted to the Mississippi manager of the appellant insurance company he declined

to recognize the same, and the appellant was advised that the same was rejected and that the appellee intended to stand on the policy as it existed on the date of the fire.

The premium for the backdated vacancy permit in the sum of $8.75 was paid by the insured, and it was shown in a running account of the insured or of the local insurance agency, Robert Barksdale Company, Inc., with the appellee, and was never refunded or tendered back to the insured until the filing of the appellee's answer to the suit a few months later, but as stated in the opinion of this Court rendered in the case of John Hart Asher v. Birmingham Fire Insurance Company on January 16, 1961, the circumstances in reference to the failure to refund this premium earlier "was fully explained".

No vacancy permit was ever requested or issued prior to the fire. Nor was it shown that the appellee Old Colony Insurance Company knew that the attempt to obtain the vacancy permit was made until after the fire.

Since the property was already destroyed by fire at the time the attempt was made to get the vacancy permit, there was nothing to insure at that time. Property which has already been destroyed by fire can not be covered by a fire insurance policy.

In 6 Couch on Insurance, Section 1331, it is stated: "If property has been totally lost, and this is known by the parties, there is nothing to insure, no event to be indemnified against, no unknown event upon which to base the contract, so that in such case there can be no lawful or valid insurance."

In Hopkins v. Phoenix Fire Ins. Co., (Ky) 254 S. W. 1041, it was held: "A fire insurance agent has no authority to bind his principal by attempting to insure property already destroyed. * * *

"It seems to be a well-settled legal principle that an insurance agent, though he have authority to sign and deliver policies, cannot bind his principal in an attempt

to assume a risk which has already become non-existent. * * *

"The very nature of an insurance contract is to indemnify the insurer against risk, and when there is no longer any risk, and the fact is known to both parties, the very purpose of the contract is destroyed, and it might be that such a contract would be against public policy."

In the case of Scottish Union & National Ins. Co. v. Warren-Gee Lbr. Co., 118 Miss. 740, 80 So. 9, it was held that a contract of fire insurance must have been consummated before the fire occurred.

It appears that a year or more before this policy was written the appellant had a telephone conversation with a Mrs. Wallace of the Robert Barksdale Company, Inc., wherein he inquired of her as to the necessity of a vacancy permit on some Jackson property, and was advised that such a permit was not required. But the chancellor held that he was unable to see how the appellant could have been misled by that conversation into believing that a vacancy permit would not be needed under a policy on property located in the rural area where the property in question was located. The testimony of Mr. Barksdale as to what he thought the insured may have understood from his conversation with Mrs. Wallace was objected to and in our opinion was inadmissible. We do not think that what Mrs. Wallace may have said to the appellant could be held to constitute a waiver of the necessity for a vacancy permit on the property in question. Nor do we think that the retention of the $8.75 premium, under the facts and circumstances explained, could have estopped the appellee from relying upon the terms of the policy as it existed at the time of the fire.

As hereinbefore stated, we think that the opinion in the case of John Hart Asher v. Birmingham Fire Insurance Company, rendered on January 16, 1961, fully controls the instant case in all of its material aspects,

unless there was error in overruling the motion to be allowed to reopen the case on October 16, 1959, and, as already stated, we do not think that the chancellor abused his discretion in that particular.

The judgment appealed from must therefore be affirmed.

Affirmed.

*Lee, Kyle, Gillespie* and *Rodgers, JJ.,* concur.